**Holden Meril BAKER, Appellant,**

v.

**STATE of Texas, Appellee.**

**Nos. 11–01–00167–CR, 11–01–00168–CR.**

Court of Appeals of Texas, Eastland.

Oct. 10, 2002.

Allan Fishburn, Dallas, for appellant.

Bill Hill, Criminal Dist. Atty., Dallas, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

TERRY McCALL, Justice.

The jury convicted appellant of the aggravated sexual assault of a 10–year–old girl (Cause No. 11–01–00167–CR) and the aggravated sexual assault of her mother (Cause No. 11–01–00168–CR). The jury assessed punishment in each case at life imprisonment and a $1,000 fine. In five points of error, appellant argues that: (1) the trial court erred by failing to define reasonable doubt in the jury charge; (2) the evidence was factually insufficient to prove that appellant sexually assaulted either of the victims; (3) the trial court erred by denying appellant's motion for mistrial after the State's impermissible jury argument; and (4) the trial court erred by failing to properly limit the defi-

nitions of "intentionally" and "knowingly" to the relevant conduct elements in the jury charge. We affirm.

In Cause No. 11–01–00167–CR, appellant argues in his second and third points of error that the evidence is factually insufficient to support his conviction for aggravated sexual assault of the child victim (K.M.). In Cause No. 11–01–00168–CR, appellant argues in his second point of error that the evidence is factually insufficient to support his conviction for aggravated sexual assault of the mother (P.M.).

 In deciding whether the evidence is factually sufficient to support the conviction, we must review all of the evidence in a neutral light favoring neither party to determine if the verdict is so against the great weight of the evidence as to be clearly wrong and unjust. *Johnson v. State,* 23 S.W.3d 1 (Tex.Cr.App.2000); *Clewis v. State,* 922 S.W.2d 126 (Tex.Cr.App.1996). We review the fact finder's weighing of the evidence and cannot substitute our judgment for that of the fact finder. *Cain v. State,* 958 S.W.2d 404 (Tex.Cr.App.1997); *Clewis v. State, supra.* Due deference must be given to the jury's determination, particularly concerning the weight and credibility of the evidence. *Johnson v. State, supra; Jones v. State,* 944 S.W.2d 642 (Tex.Cr.App.1996), *cert. den'd,* 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). This court has the authority to disagree with the fact finder's determination "only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Johnson v. State, supra* at 9.

K.M. testified that, in September 1996, she lived in Baton Rouge, Louisiana, with her mother, P.M., and her mother's boyfriend, Troy. Troy is appellant's brother. At that time, P.M. and Troy were arguing, and K.M. and P.M. went to stay with appellant. There were several other friends and relatives who were also staying with appellant. The group began staying at different motels because appellant said that Troy was making threats to harm them. At the last motel where the group stayed, appellant asked P.M. to drive him to Texas. K.M. testified that P.M. initially refused to take appellant to Texas because K.M. was in school. K.M. stated that appellant threatened to "slice [K.M.'s] throat" if P.M. did not drive him to Texas. P.M. then agreed to drive appellant to Texas if he would not hurt K.M.

K.M. testified that she, P.M., and appellant went to Houston for one night, and then they went to Dallas where they stayed at the Lawnview Motel. One night at the motel, K.M. was taking a shower when she heard a noise. She got out of the shower and opened the door of the bathroom. K.M. testified that appellant was holding a knife and taping P.M.'s arms and mouth. Appellant grabbed K.M., pulled her out of the bathroom, and told her to "shut up" or he would "slice [her] throat." K.M. stated that appellant held the knife to her throat. K.M. said that appellant slapped P.M. and that P.M. fell to the floor.

K.M. testified that appellant made her go and sit by the chair. K.M. sat on the floor on her knees while appellant sat in the chair. Appellant told P.M., "if she didn't want to watch what was about to happen, that he'd turn her over on her side." Appellant then returned to K.M. and "undid his pants." He grabbed K.M.'s hand and put it inside of his pants. Appellant instructed K.M. to remove the towel she was wearing, and he began to touch her and "feel all over [her] body." K.M. testified that appellant put his hands "[b]etween [her] legs" and his fingers "inside" of her. Appellant then allowed K.M. to put on her Tweety Bird pajamas and lay next to P.M. on the bed.

K.M. testified that appellant told them that he would kill them if they made any "weird movements." Appellant took the tape off of P.M.'s mouth and "ripped off" her clothes. Appellant pulled down his pants, got on top of P.M., and "raped" her. Appellant left the tape on P.M.'s hands the entire night. The next day, appellant bought K.M. a teddy bear, told her he was sorry, and said that he "wasn't going to do it again."

K.M. stated, however, that that night, appellant told her and P.M. to take off their clothes. K.M. said that appellant again put his fingers "inside" of her and that, "after he was finished with [her], then he would go to [P.M.]." K.M. testified that appellant made both her and P.M. perform oral sex on him.

K.M. testified that, on the last night they were in Dallas, appellant sent P.M. to the store for cigarettes. While P.M. was gone, appellant again made K.M. perform oral sex. K.M. stated that, when P.M. returned, appellant "raped" P.M. again. The next day they returned to Baton Rouge. K.M. said that they dropped appellant off on the side of the road and that he ran into the woods. Appellant told K.M. and P.M. to tell Troy what he had done to them. K.M. and P.M. went to K.M.'s grandmother's house to sleep. K.M. testified that she and P.M. then went to her aunt and uncle's house and told her uncle, who is a police officer, what had happened. K.M. and P.M. went to the hospital and the police station and then returned to stay with K.M.'s aunt and uncle.

P.M. also testified at trial that, after staying at appellant's house and several motels, appellant threatened to "slice [K.M.'s] throat" if P.M. did not take him to Texas. P.M. testified that, the second night they were in Dallas, appellant taped her arms and mouth with duct tape while K.M. was in the shower. When K.M. got out of the shower, appellant grabbed her and her towel fell. Appellant then hit P.M. and turned her over so that she could not see what he was doing to K.M. P.M. testified that, while they were in Dallas, appellant made both her and K.M. perform oral sex on him and that he made P.M. have "regular sex" with him. P.M. also testified that appellant put his finger inside of K.M.

Dr. Holly Galland testified that she examined both K.M. and P.M. Dr. Galland stated that the exam of P.M. was a "negative exam" and that she did not find any evidence of injuries. Dr. Galland stated that it is common for women to not show signs of trauma when engaging in sexual activity. Dr. Galland stated that K.M. had a few small lacerations and bruises on her genital area. Dr. Galland noted that these injuries indicated there was some trauma which could have resulted from digital penetration.

■ Appellant specifically argues in his second and third points of error in Cause No. 11–01–00167–CR that the evidence is factually insufficient to show that he "caused contact or penetration of [K.M.'s] mouth with his penis" and that he "caused the penetration of [K.M.'s] sexual organ with his finger." Appellant contends in his second point of error in Cause No. 11–01–00168–CR that the evidence is factually insufficient to show that he "had sexual intercourse with [P.M.]." Both K.M. and P.M. testified that appellant made them perform oral sex on him. Both victims also testified that appellant put his finger "inside" of K.M. P.M. testified that appellant made her have "regular sex" with him, and K.M. testified that appellant "raped" P.M. The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PRO. ANN. arts.

36.13 & 38.04 (Vernon 1979 and 1981); *Wesbrook v. State*, 29 S.W.3d 103 (Tex.Cr. App.2000), *cert. den'd*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). Viewing all of the evidence, we do not find that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, supra. We overrule appellant's second and third points of error in Cause No. 11–01–00167–CR and his second point of error in Cause No. 11–01–00168–CR.

◼ In his first point of error in both cause numbers, appellant argues that the trial court erred in failing to include a reasonable doubt definition in the jury charge. In *Paulson v. State*, 28 S.W.3d 570 (Tex.Cr.App.2000), the court held that the reasonable doubt definition set out in *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr. App.1991), is no longer required to be given in the jury charge. The court handed down *Paulson* on October 4, 2000. Appellant was indicted on March 14, 2001, and the trial began on March 26, 2001. Appellant contends that, because the offense occurred in September 1996, the trial court was required to give the definition as instructed by *Geesa*.

The reasonable doubt instruction is procedural in nature. See *Geesa v. State*, *supra*. Procedural rules generally control litigation from their effective date. *Wilson v. State*, 473 S.W.2d 532 (Tex.Cr.App. 1971); *Montez v. State*, 975 S.W.2d 370 (Tex.App.-Dallas 1998, no pet'n). Therefore, *Paulson* was applied prospectively in this case. See *Geesa v. State, supra.* Moreover, in *Arroyo*, the San Antonio Court of Appeals reversed the defendant's conviction because the trial court failed to give the entire *Geesa* instruction. *Arroyo v. State*, 9 S.W.3d 330 (Tex.App.-San Antonio 1999). The Court of Criminal Appeals reversed the San Antonio Court of Appeals for reconsideration in light of *Paulson* thereby indicating *Paulson* applied notwithstanding it had not issued at the time of the defendant's trial. See *Arroyo v. State*, 32 S.W.3d 868 (Tex.Cr.App.2000); see also *Bordman v. State*, 56 S.W.3d 63, 72 (Tex.App.-Houston [14th Dist.] 2001, pet'n ref'd). Appellant's first point of error in both cause numbers is overruled.

◼ In his fourth point of error in Cause No. 11–01–00167–CR and in his third point of error in Cause No. 11–01–00168–CR, appellant argues that the trial court improperly overruled his motion for mistrial after the State's improper jury argument. The State made the following argument to the jury:

> The defense lawyer who was just up here talking to you, has got a different job. His job isn't defined to seek justice. His job is to be an advocate for this man. His job is, is to keep your eyes off the truth.

Appellant objected to the argument; and the trial court sustained appellant's objection, instructed the jury to disregard the remark, and denied appellant's motion for a mistrial.

◼ There are four permissible areas of jury argument: "(1) summations of the evidence; (2) reasonable deductions from the evidence; (3) responses to the defendant's argument; or (4) a plea for law enforcement." *Lagrone v. State*, 942 S.W.2d 602, 619 (Tex.Cr.App.1997). An instruction to disregard generally cures error during closing argument unless the argument is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonition. *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Cr.App. 1991), *cert. den'd*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992); *McMillan v. State*, 926 S.W.2d 809 (Tex.App.-Eastland 1996, pet'n ref'd). We find that the State's argument was not so inflammatory that

any prejudicial effect could not be removed by the trial court's instruction to disregard. Appellant's fourth point of error in Cause No. 11–01–00167–CR and his third point of error in Cause No. 11–01–00168–CR are overruled.

In his fifth point of error in Cause No. 11–01–00167–CR and in his fourth point of error in Cause No. 11–01–00168–CR, appellant claims that the trial court failed to limit the definitions of "intentionally" and "knowingly" to the relevant conduct elements of aggravated sexual assault in the jury charge. TEX. PENAL CODE ANN. § 6.03 (Vernon 1994) allows each element of an offense to be placed into one of three categories: (1) the nature of the conduct; (2) the result of the conduct; or (3) circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex.Cr.App.1989); *Alvarado v. State*, 704 S.W.2d 36, 38 (Tex.Cr.App.1985); *Pitre v. State*, 44 S.W.3d 616 (Tex.App.-Eastland 2001, pet'n ref'd). The charge in both cause numbers defined intentionally and knowingly as follows:

A person acts intentionally, or with intent, with respect to the nature of his conduct [or] as to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Appellant contends in Cause No. 11–01–00167–CR that aggravated sexual assault of a child under fourteen years of age is a "nature of conduct" offense and that the trial court erred in defining intentionally and knowingly in terms of "result of conduct." Appellant cites *Saldivar v. State*, 783 S.W.2d 265 (Tex.App.-Corpus Christi 1989, no writ), in which the court found

that the offense of aggravated sexual assault of a child is result oriented only. The court in *Saldivar* also noted that sexual assault can be both result oriented and conduct oriented depending on whether the " 'specified result'... occurs in conjunction with either other 'specified results,' 'specific conduct,' or a circumstance of the victim." *Saldivar v. State*, supra at 267; see *Pitre v. State*, supra. Appellant disagrees with the reasoning of *Saldivar* and argues that the:

[S]tatutory prohibition of causing the penetration of the mouth of the child or causing the penetration of the sexual organ of the child indicates a legislative intention to punish conduct that is criminal by its very nature.

█ We find that aggravated sexual assault of a child involves both result of conduct and nature of conduct elements. A person commits the offense of aggravated sexual assault of a child if he "causes the penetration of the anus or female sexual organ of a child by any means" or if he "causes the penetration of the mouth of a child by the sexual organ of the actor." TEX. PENAL CODE ANN. § 22.021(a)(B)(i) & (ii) (Vernon Supp.2002). To cause "the penetration of the anus or female sexual organ" involves a result of conduct. *Pitre v. State*, supra at 620. "By any means" or "by the sexual organ of the actor" involves a type or nature of conduct. Because the aggravated sexual assault involved a child, the result of conduct and nature of conduct elements were criminalized; the State did not have to prove that it was without the child's consent. See *Saldivar v. State*, supra. The application paragraph in Cause No. 11–01–00167–CR authorized the jury to convict appellant if it found that he "did intentionally or knowingly cause contact or penetration of the mouth of [K.M.] with the sexual organ of [appellant]" or that he "did knowingly or

intentionally cause the penetration of the female sexual organ of [K.M.] by an object, to-wit: the finger of [appellant]." Thus, the application paragraph allowed the jury to apply the appropriate portion of the definitions to the facts. The trial court did not err in defining intentionally and knowingly in terms of result of conduct in Cause No. 11–01–00167–CR.

■ Appellant argues in Cause No. 11–01–00168–CR that aggravated sexual assault contains all three conduct elements and that the definition of the correct mental state should be limited to the particular element. Appellant contends that an appropriate jury charge would state:

The following definition applies to the mental state in causing the penetration of the female sexual organ with the male sexual organ: A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge with respect to the nature of his conduct when he is aware of the nature of his conduct. A person acts knowingly or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The following definition applies to the mental state in causing the penetration of the female sexual organ without the consent of the complainant: A person acts knowingly, or with knowledge, with respect to the circumstances surrounding his conduct when he is aware that the circumstances exist.

■ Appellant concedes that whether aggravated sexual assault is a nature of conduct or result of conduct or combined offense has not been settled by the Court of Criminal Appeals. See *Cook v. State*,

884 S.W.2d 485, 492–94 (Tex.Cr.App.1994)(Maloney, J., concurring); *Duhart v. State*, 890 S.W.2d 187 (Tex.App.-Corpus Christi 1994, no pet'n). Where an offense is not clearly categorized with respect to the conduct elements required, the trial court may submit the full statutory definitions of "intentionally" and "knowingly" because both definitions allow the jury to consider the nature of the offender's conduct or the results of his conduct. *Murray v. State*, 804 S.W.2d 279, 281 (Tex.App.-Fort Worth 1991, pet'n ref'd).

Appellant is correct that aggravated sexual assault does involve all three conduct elements with "without her consent" being "circumstances surrounding his conduct." "Without her consent," however, is what criminalizes the result of conduct and nature of conduct elements. *Pitre v. State*, supra at 620. The indictment alleged that appellant knowingly and intentionally caused the penetration of the female sexual organ of P.M. without her consent by means of his sexual organ. This allegation involved both result of conduct and nature of conduct elements which were criminalized because they were without her consent. *Pitre v. State*, supra. The application paragraph in the charge tracked the indictment. The application paragraph authorized the jury to convict appellant if it found that he "did knowingly or intentionally cause the penetration of the female sexual organ of [P.M.] without the consent of [P.M.] by means of an object, to-wit: the sexual organ of [appellant]." The application paragraph allowed the jury to apply only the appropriate portions of the definitions to the facts. *Pitre v. State*, supra. The trial court did not err in its definitions of intentionally and knowingly in Cause No. 11–01–00168–CR.

■ Moreover, appellant did not object to the jury charge; therefore, any error

must be so egregious that appellant did not receive a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Cr.App.1984). Even if the trial court somehow erred in its charge, we find that appellant did not suffer egregious harm as a result of the court's definitions of intentionally and knowingly. Appellant's fifth point of error in Cause No. 11–01–00167–CR and his fourth point of error in Cause No. 11–01–00168–CR are overruled.

The judgments of the trial court are affirmed.