COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MITCHELL WINDELL WAGNER, | § | |
| | | No. 08-09-00021-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 363rd District Court |
| THE STATE OF TEXAS, | § | |
| | | of Dallas County, Texas |
| Appellee. | § | |
| | | (TC# F-0772250-W) |
| | § | |

**O P I N I O N**

Appellant, Mitchell Wagner, was convicted of aggravated sexual assault of a child and sentenced to life imprisonment. In four issues on appeal, Appellant challenges the factual sufficiency of the evidence and contends that there was error in the jury charge. We affirm.[1]

**BACKGROUND**

Between ages five and nine, Miesha Norris spent several weekends with Appellant, a music minister at the church she attended, while Miesha's mom, Sheila, took care of her grandmother, who suffered from Alzheimer's disease. Miesha thought of Appellant, who was a close friend of Miesha's mom, as a father figure. Appellant, who liked to help single mothers, was aware of Sheila's care taking duties and offered to let Miesha spend weekends with him so that he could take her to his church.

During those visits, Miesha and Appellant played "pony ride," a game he told Miesha was normal and a secret, in Appellant's bedroom. The game, which Appellant created, required Miesha

---

[1] As this case has been transferred to our Court, we "decide the case in accordance with the precedent of the transferor court" in arriving at our conclusion. *See* TEX. R. APP. P. 41.3.

to sit on top of him as they played a Nintendo game. Miesha and Appellant were either completely or partially unclothed during the game, and at a certain point, Appellant's penis penetrated Miesha's vagina. Although the penetration was uncomfortable, Miesha grew accustomed to it over time as they played pony ride several times during the course of one weekend. Sometimes the game continued into the night when Miesha slept with Appellant in his bed. At times, she woke without any clothes on and some bleeding, but she thought it was just part of the game. Appellant told Miesha not to tell anyone.

Miesha was sexually assaulted in other parts of the house, as well. When she was seven, Miesha would lay on a bed, in a small room off of the kitchen, and Appellant would lay on top of her. They were naked from the waist down, and Appellant, while Miesha's legs were bent and her knees apart, would insert his "hard" penis into her vagina and move it back and forth.[2] The same assault occurred in the living room on the couch. By this time, Miesha was used to sexual intercourse with Appellant and enjoyed it.

When Miesha was ten, her father moved home and she stopped spending time with Appellant. But when her father died four years later, Miesha saw Appellant a few times and initiated sexual intercourse with him on one occasion. During that encounter, Appellant used a condom.

When Miesha started staying with Appellant, her behavior changed. She had to be restrained and taken by ambulance to a hospital twice, once for biting her mother and once for acting out at school. She also broke Sheila's jewelry. Miesha was diagnosed with Attention Deficit Disorder and prescribed Ritalin. After her father died and Miesha resumed contact with Appellant, Miesha's behavior worsened. At fifteen or sixteen, Sheila questioned Miesha about her behavior, and Miesha told her about the sexual abuse. Sheila took Miesha to the Parkland Rape Crisis Center, sought help

---

[2] At trial, the State elected to proceed on this offense.

from Promise House, and worked with a therapist at the Dallas Children's Advocacy Center. When Sheila felt Miesha was ready to discuss it, she reported the abuse to the police, which made Miesha angry.

Miesha later spoke with Dallas Police Detective Jerry Williams and Dallas County Investigator Greg Sherrell. During her interview with Williams, Miesha disclosed that Appellant started sexually abusing her when she was six, that the sexual assaults continued until she was eight, and that they played "pony ride," a game where she would sit on Appellant's penis and move up and down. Her interview with Sherrell was similar except that Miesha claimed the abuse occurred between the ages of five and ten. Miesha, however, did not tell Williams or Sherrell about the sexual encounter when she was fourteen.

At trial, Ellen Elliston, the director of the Victim Intervention and Rape Crisis Center at Parkland Hospital, testified that young children are vulnerable and compliant and that some adults engage in grooming where they build a relationship with a child through time and attention for purposes of engaging in sexual activity with the child. According to Elliston, playing a "pony ride" game with a child that resulted in sexual activity was consistent with how an adult manipulates a child into engaging in sexual activity as the groomer leads the child to believe that the activity is normal. Elliston noted that the abuser is generally someone the child knows and that the lack of a father figure makes a child especially vulnerable. Only a small percentage of children lie about being sexually abused.

Dr. Matthew Cox, the director of REACH, a child abuse program at Children's Medical Center, testified that it is common for children to delay disclosure of sexual abuse, that the insertion of a male penis into a child's vagina may not cause serious physical harm, and that a physical exam of a fifteen- or sixteen-year-old girl claiming past sexual abuse will rarely yield any injuries as those

injuries would have healed quickly.

Appellant's daughter and son, Sophia and Chris Wagner, who lived with him during the time of the alleged assault, testified that Miesha did not attend church with them and never spent the weekend at their house. According to Chris, Miesha visited their house a few times for only thirty minutes to an hour, but she never spent the night. However, Mildred Guy, a member of Miesha's church, testified that Miesha had a reputation for being truthful and honest.

## FACTUAL SUFFICIENCY

In his first issue, Appellant contends that the evidence is factually insufficient to support his conviction. According to the indictment, Appellant was alleged to have committed the offense by penetrating Miesha's vagina with his penis. Although Appellant concedes that the evidence is legally sufficient to support the charged indictment, he argues that the evidence is factually insufficient as Miesha's testimony was incredible.

### Standard of Review

A person commits aggravated sexual assault of a child where he intentionally and knowingly causes the penetration of the sexual organ of a child younger than fourteen years of age by any means. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2009). A child's testimony alone is sufficient to support a conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.–Dallas 2002, pet. ref'd).

In reviewing the factual sufficiency of the evidence, we review all of the evidence in a neutral light to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems

clearly wrong and manifestly unjust; and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Id.* "Although an appellate court has the ability to second-guess the jury to a limited degree, the factual-sufficiency review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur." *Id.*

*Application*

Recognizing that Miesha's testimony alone is sufficient to support his conviction for aggravated sexual assault of a child, Appellant asserts that her testimony was incredible for three reasons. First, Appellant claims that as the abuse occurred several years prior to the trial, Miesha's accounts were unreliable. Second, Appellant alleges that Miesha misunderstood the abuse since she believed the sexual intercourse, at the time of the abuse, was normal. And third, Appellant contends that because he was incarcerated during some of the periods Miesha alleged the abuse occurred, and that because his son and daughter testified that Miesha never spent the night, much less spent more than thirty minutes to an hour at his house, we should find her testimony incredible.

Although Miesha was eighteen at the time of trial and the offense Appellant was convicted of occurred when Miesha was seven years old, nothing in her testimony indicates that her memory of the sexual abuse was inaccurate. To the contrary, Miesha was able to describe in detail the assault that happened in the back room, noting that they were naked from the waist down and that she would lie on the bed, with her knees bent and apart, and her feet on the bed as Appellant penetrated her vagina with his penis. She testified that it happened several times, and her relation of the assault was consistent. The jury was entitled to believe Miesha's testimony despite the gap in time. *See Newby v. State*, 252 S.W.3d 431, 436 (Tex. App.–Houston [14th Dist.] 2008, pet. ref'd) (stating that courts give wide latitude to testimony given by child victims of sexual abuse); *Smith v. State*, No. 08-03-

00461-CR, 2005 WL 277702, at *3-4 (Tex. App.–El Paso Feb. 3, 2005, no pet.) (op., not designated for publication) (deferring to jury's assessment of credibility and holding evidence sufficient in aggravated-sexual-assault-of-a-child case, despite claims that victim was incredible and had a faulty memory, when victim never wavered from her story that Appellant sexually assaulted her).

Moreover, even if Miesha believed the sexual abuse was normal, we are not concerned with Miesha's understanding of the abuse as right or wrong. Rather, we are concerned with Appellant's intent, and Elliston relayed that a child molester grooms the child and convinces her that sexual activity with an adult is normal. And when, as here, the victim lacks a father figure, the child is especially vulnerable. Therefore, the jury could have reasonably inferred that Appellant groomed Miesha into thinking the prohibited sexual abuse was normal. Although Miesha thought the abuse was a game, that does not discount the fact that the abuse was still a statutory prohibited act. *See Mendiola v. State*, No. 01-02-00556-CR, 2003 WL 22413903, at *4-5 (Tex. App.–Houston [1st Dist.] Oct. 23, 2003) (mem. op., not designated for publication) (finding evidence factually sufficient when complainant informed outcry witness that defendant attempted to make her touch his middle part and evidence showed defendant's repeated requests for hugs and kisses, and questioned whether complainant loved him, were consistent with "grooming" the complainant for later sexual contact), *habeas corpus granted on other grounds by Ex parte Mendiola*, No. AP-75,476, 2006 WL 2075667 (Tex. Crim. App. Jul. 26, 2006) (op., not designated for publication).

Finally, to any extent that Miesha's statement that she spent 42 out of 52 weekends at Appellant's house from September 1, 1995, to September 1, 1996, conflicted with documentation admitted at trial showing Appellant was incarcerated from March 1996 to July 1996, or the testimony of Appellant's children, we note that this was a credibility issue and conflict the jury was entitled to resolve. The jury, as the sole judge of the weight and credibility of the witnesses, could have chosen

to believe Miesha's testimony over that of Chris and Sophia, and could have rationally concluded that the sexual abuse occurred when Miesha spent those weekends in 1996 at Appellant's house when he was not incarcerated. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (stating we cannot expect a child victim to testify with the same clarity and ability as mature, capable adults); *see also Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (jury resolves credibility issues); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (jury resolves conflicts in evidence).

In short, we have reviewed the evidence in a neutral light and conclude that the evidence supporting Appellant's guilt is not sufficiently outweighed by contrary evidence. Appellant's attacks on Miesha's credibility went to the weight of the evidence, not its sufficiency. It was within the jury's province to judge the credibility of the witnesses and choose to believe all, some, or none of their testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Moreover, it was the function of the jury to resolve any conflicts in the evidence. *See Lancon*, 253 S.W.3d at 705. The evidence is not insufficient simply because the jury chose to accept the State's version of the events over that of the defense. *Saxton*, 804 S.W.2d at 914. Here, the jury was free to believe Miesha's testimony, accept Elliston's theories, and resolve any conflicts in the State's favor. Similarly, it was within the jury's exclusive province to disbelieve the testimony of Appellant's children, who noted that they wished to prevent their father from being incarcerated. After reviewing Miesha's testimony and the entire record, we do not find it so incredible that we should set aside the jury's verdict as manifestly unjust. Accordingly, we, having reviewed all the evidence in a neutral light, find the evidence factually sufficient and overrule Appellant's first issue.

## JURY CHARGE

Appellant's remaining issues contend that there was error in the jury charge. Specifically,

Appellant claims that the jury charge failed to limit the definitions of intentionally and knowingly to the requisite mental state (Issue Two), and that the definition of reasonable doubt (Issue Three) and the good conduct time instruction (Issue Four) should have been excluded.

*Standard of Review*

We employ a two-step analysis when reviewing alleged error in the jury charge. *Torres v. State*, 116 S.W.3d 208, 210 (Tex. App.–El Paso 2003, no pet.). First, we determine whether error actually exists in the charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), *overruled on other grounds, Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988); *Torres*, 116 S.W.3d at 210-11. If we find error, we then determine whether sufficient harm resulted therefrom to require reversal. *Almanza*, 686 S.W.2d at 171; *Torres*, 116 S.W.3d at 211. When, as here, there was no objection to the jury charge, Appellant must show egregious harm resulting from the error. *Almanza*, 686 S.W.2d at 171; *Torres*, 116 S.W.3d at 211.

*Conduct Elements*

Appellant's second issue contends that aggravated sexual assault of a child is a nature-of-the-conduct offense, and as such, the trial court erroneously charged the jury by failing to limit the definitions of intentionally and knowingly to the culpable mental state. The relevant parts of the jury charge are set out below:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct it reasonably certain to cause the result.

The application paragraph stated:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 1st day of June, A .D., 1998, in Dallas County, Texas, the defendant, Mitchell Windell Wagner, did unlawfully, then and there intentionally or knowingly cause the contact or penetration of the female sexual organ of Miesha Norris, a child, who was not then the spouse of the defendant, by an object, to-wit: the sexual organ of said defendant . . . and at the time of the offense, the child was younger than 14 years of age, then you will find the defendant guilty of aggravated sexual assault of a child as charged in the indictment.

An offense may be labeled both result oriented and nature of the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). However, when an offense is only result oriented or nature of the conduct, the court should limit the statutory definitions of knowingly and intentionally to the culpable mental state required. *Murray v. State*, 804 S.W.2d 279, 281 (Tex. App.–Fort Worth 1991, pet. ref'd); *Saldivar v. State*, 783 S.W.2d 265, 267-68 (Tex. App.–Corpus Christi 1989, no pet.). In contrast, if an offense is not clearly result oriented or nature of the conduct, the trial court does not err by submitting both in its definitions of knowingly and intentionally. *Saldivar*, 783 S.W.2d at 267; *Bosier v. State*, 771 S.W.2d 221, 225 (Tex. App.–Houston [1st Dist.] 1989, pet. ref'd).

Here, the parties agree that the Court of Criminal Appeals has not addressed whether aggravated sexual assault of a child is a result-oriented or nature-of-the-conduct offense. However, the Eastland Court of Appeals has concluded that the offense involves both result-of-conduct and nature-of-conduct elements. *See Baker v. State*, 94 S.W.3d 684, 690 (Tex. App.–Eastland 2002, no pet.). The Dallas Court of Appeals has noted that "until the Court of Criminal Appeals classifies aggravated sexual assault [of a child] as either a result oriented or nature of the conduct offense, it is not error for the trial court to submit the complete definition of intentionally and knowingly." *See Martinez v. State*, No. 05-00-00517-CR, 2002 WL 257697, at *3 (Tex. App.–Dallas Feb. 25, 2002,

no pet.) (op., not designated for publication); *see also Mays v. State*, No. 05-02-01376-CR, 2003 WL 22405169, at *5 (Tex. App.–Dallas Oct. 22, 2003, pet. ref'd) (op., not designated for publication); *Harris v. State*, No. 05-98-01727-CR, 2000 WL 567231, at *5 (Tex. App.–Dallas May 11, 2000, no pet.) (op., not designated for publication). As this case has been transferred to us from the Dallas Court of Appeals, we adopt our sister court's conclusion and hold that until aggravated sexual assault of a child has been categorized as a result-oriented or nature-of-conduct offense by the Court of Criminal Appeals, the trial court does not err by submitting both definitions of "intentionally" and "knowingly" in the jury charge. *See* TEX. R. APP. P. 41.3. Accordingly, because both instructions were given in this case, we find no error in the charge and overrule Appellant's second issue.

*Reasonable Doubt*

In his third issue, Appellant contends that the trial court erred by including a definition of reasonable doubt in the jury charge. Specifically, Appellant complains of the following instruction: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." According to Appellant, such an instruction violates the Court of Criminal Appeals' mandate that no definition of reasonable doubt may be given in the jury charge. *See Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).

However, we have already held, in accordance with many of our sister courts, that the instruction given in this case does not constitute a definition of reasonable doubt in violation of *Paulson* but rather simply states the legally correct proposition that the prosecution's burden is to establish proof beyond a reasonable doubt and not beyond all doubt. *See Torres*, 116 S.W.3d at 212; *see also Bates v. State*, 164 S.W.3d 928, 931 (Tex. App.–Dallas 2005, no pet.); *O'Canas v. State*, 140 S.W.3d 695, 701-02 (Tex. App.–Dallas 2003, pet. ref'd); *Ochoa v. State*, 119 S.W.3d 825, 829

(Tex. App.–San Antonio 2003, no pet.); *Fluellen v. State*, 104 S.W.3d 152, 163-64 (Tex. App.–Texarkana 2003, no pet.); *Minor v. State*, 91 S.W.3d 824, 828-29 (Tex. App.–Fort Worth 2002, pet. ref'd); *Carriere v. State*, 84 S.W.3d 753 , 759 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd) (cases finding no error in the inclusion of the instruction in the jury charge); *but see Rodriguez v. State*, 96 S.W.3d 398, 405 (Tex. App.–Austin 2002, pet. ref'd); *Phillips v. State*, 72 S.W.3d 719, 721 (Tex. App.–Waco 2002, no pet.) (cases disapproving of the instruction in the jury charge). Accordingly, the inclusion of the instruction was not error, and we overrule Appellant's third issue.

*Good Conduct*

Appellant's fourth issue alleges that the trial court erred by including an instruction for good conduct time in the punishment charge when by statute, he was ineligible for good conduct time credit. *See* TEX. GOV'T CODE ANN. § 508.149(a)(8) (Vernon Supp. 2009). However, article 37.07, § 4(a) mandates the inclusion of the instruction in the jury charge, and the Court of Criminal Appeals has concluded that although the instruction dictated by the statute may appear to be misleading and inapplicable to some defendants, the statute nonetheless commands that the instruction be given. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon Supp. 2009); *Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002). Therefore, inclusion of the instruction was not error.[3] *Luquis*, 72 S.W.3d at 363; *Borens v. State*, No. 05-07-01516-CR, 2009 WL 998678, at *6 (Tex. App.–Dallas Apr. 15, 2009, no pet.) (mem. op., not designated for publication); *Garrett v. State*, No. 08-01-00258-CR, 2004 WL 540427, at *2 (Tex. App.–El Paso Mar. 18, 2004, pet. ref'd) (op., not designated for publication).

---

[3] In concluding that the instruction was error, Appellant cites *Jimenez v. State*, 992 S.W.2d 633 (Tex. App.–Houston [1st Dist.] 1999), *aff'd on other grounds*, 32 S.W.3d 233 (Tex. Crim. App. 2000). However, Appellant has failed to note the Court of Criminal Appeals' later decision in *Luquis* or that *Jimenez* was expressly overruled in *Bui v. State*, 68 S.W.3d 830, 834, 841, 843-44 (Tex. App.–Houston [1st Dist.] 2002, no pet.).

Nevertheless, Appellant claims the instruction violated article 36.14, which requires the trial court to present a written charge to the jury that distinctly sets forth the law applicable to the case, and that it misled the jurors, which violated his rights to a fair trial. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007). Although the instruction may appear to conflict with the court's duty to properly set forth the law applicable to the case, the instruction refers to parole and good conduct time only as possibilities, not certainties. In addition, the charge included language admonishing the jury not to consider how parole law or good conduct time may apply to Appellant and informed the jury that he may serve his entire sentence without early release. We therefore conclude the court did not err in including the mandated instruction. *See Cagle v. State*, 23 S.W.3d 590, 594 (Tex. App.–Fort Worth 2000, pet. ref'd); *Battaglia v. State*, No. 05-06-00798-CR, 2007 WL 4098905, at *3 (Tex. App.–Dallas Nov. 19, 2007, no pet.) (op., not designated for publication) (cases rejecting identical argument).

Furthermore, other than Appellant's statement that the instruction misled the jurors, he has pointed to nothing in the record to suggest that the jury was actually misled by the instruction. Apart from a jury note asking whether "life" is a "term of imprisonment" and whether there is a difference between life and ninety-nine years, which may suggest that the jury discussed, considered, or tried to apply what they were told about good conduct time and parole, the jury was subsequently told to continue deliberating with the law provided, and given the court's charge that they were not to consider good conduct time as applied to Appellant, we presume the jury followed the court's instruction. *See Colburn v. State*, 966 S.W.2d 511, 519-20 (Tex. Crim. App. 1998) (jury was presumed to follow trial court's instruction not to consider possibility of parole even though jury had sent out note, in capital murder trial, asking whether parole was a possibility if a life sentence were assessed). Moreover, neither the prosecutor nor defense attorney discussed good conduct time in

argument or urged the jury to assess a greater (or lesser) sentence based upon any potential good conduct time credit, and although Appellant received the maximum sentence possible, life in prison, that is unsurprising given the crime, his abysmal criminal record, and his three prior extraneous aggravated sexual acts committed against children.[4] *See Luquis*, 72 S.W.3d at 367-68 (concluding Appellant was not deprived of due process by the inclusion of the good conduct time instruction when counsel refrained from discussing it during argument and his criminal record was horrible). Accordingly, we conclude the instruction did not violate his rights to a fair trial.

Finding no error in the charge, we overrule Appellant's fourth issue.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.

GUADALUPE RIVERA, Justice

May 28, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)

---

[4] During the punishment phase of the trial, three women testified to being sexually abused by Appellant when they were five, six, and thirteen years old. Further, his prior convictions for robbery, assault, retaliation, theft, and indecency with a child were admitted.