Adam S. NACOL, Appellant,

v.

The STATE of Texas, Appellee.

No. 58244.

Court of Criminal Appeals of Texas, Panel No. 1.

Nov. 14, 1979.

Rehearing En Banc Denied Dec. 19, 1979.

Joe B. Goodwin, Beaumont, Gene Richie, Wichita Falls, for appellant.

Timothy D. Eyssen, Dist. Atty., Howard L. Martin, Sp. Prosecutor, Wichita Falls, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DOUGLAS and W. C. DAVIS, JJ.

## OPINION

DOUGLAS, Judge.

Appellant was convicted of theft over $200. Punishment was assessed by the jury at two years.

Nacol was indicted for theft of thirty-six birthstone rings taken from a jewelry store in Waurika, Oklahoma. Paul McLain, the store owner, testified that he went to Nacol's store in Burkburnett, Texas, where he purchased two birthstone rings he believed to have been stolen from his store. He then went to the Wichita County district attorney's office, turned over the two rings and made his complaint. A body transmitter was concealed under his clothing and he was taken to Nacol's main jewelry store in Wichita Falls where he confronted Nacol and accused him of theft. According to McLain, Nacol reacted very nervously and offered McLain $2500 if McLain would not file suit.

A search warrant was then issued and McLain and the police proceeded to the Burkburnett store. McLain identified numerous rings in the store as his. He later testified he was able to identify the rings because of the trademark (a circle with an "S" in the center and a sunburst with an "S" in the center)[1] and because the rings seized matched the style and color of the rings stolen from his store. Everett Newberry, a former salesman for the then Schwartz Jewelry Company, testified that he was the sales representative for Schwartz in Texas and that he had never sold any birthstone rings to Nacol.

Clyde Burns testified that he and Woody Fanchier committed the burglary on McLain's store on February 20, 1975, and stole the birthstone rings. Upon their return to Wichita Falls, Burns called James Lebus to help dispose of the stolen merchandise. The three men had been working together for some eight or nine months to dispose of property stolen in numerous burglaries. Lebus was in charge of delivering the property to various fences and of pinpointing likely locations for future burglaries. Burns testified that on several occasions he heard Lebus telephone Nacol about disposing of stolen property. He also identified the rings stolen from McLain's store.

Lebus, the "finger" man, testified about his role in the enterprise. He stated that he asked Nacol to "fence" diamonds and other jewelry stolen from various Wichita Falls' residents. This relationship lasted several months. He then testified, when asked about the disposition of McLain's birthstone rings, that he assumed that he received the rings and sold them to Nacol. Though he did not tell Nacol that the property was stolen, he stated that, because the arrangement had gone on for so long, it was unnecessary to tell Nacol the status of the property. He identified the birthstone rings as being of the same type stolen from McLain's store.

Appellant challenges the appointment of the Honorable Howard Martin as Special Prosecutor in this case, first because Martin was not required to disclose the names of the contributors to the fund used to employ him and second, because there was no order limiting his participation and conduct in the case. It was undisputed that the Honorable Timothy Eyssen, the elected district attorney of Wichita County, was present and able to conduct the State's case.

---

1. These trademarks indicated that the manufacturer was Schwartz and Company of Buffalo, New York. Each trademark is registered with the Jeweler Board of Trade.

In *Loshe v. State,* 160 Tex.Cr.R. 561, 272 S.W.2d 517 (1954), this Court held that the trial court did not abuse its discretion in not limiting the role of or in not forbidding the appearance of a volunteer special prosecutor. There must be a showing that the rights of the accused were prejudiced or that the appearance of a special prosecutor led the jury to believe that sentiment was so aroused against the accused as to require a special prosecutor. Any evidence of widespread hostility to appellant was brought out on cross-examination of the State's reputation witnesses who testified that they contributed to that fund. Appellant cannot now complain on appeal of that evidence. *Bueno v. State,* 409 S.W.2d 421 (Tex.Cr. App.1966). Further, appellant's change of venue motion was granted because of the presence in the community of those contributors.

In *Emerson v. State,* 54 Tex.Cr.R. 628, 114 S.W. 834 (1908), this Court discussed the prejudicial impact on a defendant's rights when the appointed special prosecutor discussed the case with the defendant prior to his appointment. *Kizzee v. State,* 166 Tex.Cr.R. 191, 312 S.W.2d 661 (1958), held that a special prosecutor was not disqualified where there was no showing that he talked to the defendant or his witnesses prior to the appointment. Appellant has made no showing of harm nor has he shown the relevance of the names of the contributors. These contentions are overruled.

Appellant also complains that the trial court abused its discretion in not requiring the production of the grand jury testimony of Burns, Lebus and Fanchier. Though he was given the statements of these witnesses, he contends that these statements contain nothing about the burglary in question and that he was not given the grand jury testimony, and because of this, he was denied the right of effective cross-examination and impeachment with inconsistent statements.

Nacol has not shown that any grand jury testimony of the three witnesses was available. Defense counsel requested the testimony, as well as any other statements made by the witnesses, after each of the witnesses testified. Each time, the State examined its records of the case and informed the court that no grand jury testimony was available. Only in the case of Fanchier was the State uncertain about the existence of transcribed jury testimony. Nacol never established the existence of that transcription. No harm has been shown. Appellant's contention is overruled.

Next he contends that the court erred in admitting a tape recording of a conversation between Nacol and McLain; first, because the State failed to lay a proper predicate for the tape's admission and, secondly, because the State failed to show the extent of the "cleaning up" of the tape by the F.B.I. crime laboratory.

Officer Tommy Johnson of the Department of Public Safety testified that he outfitted McLain with the body transmitter and that he monitored the conversation. Johnson stated that the microphone was very sensitive and capable of monitoring conversations at a distance and that he had been trained in the device's operation. He related that he listened to the conversation as it was being taped, that there were no changes, additions, or deletions to the tape upon its return from the F.B.I. lab and that it was in the same condition as when the conversation was recorded. He identified the voices as those of McLain and Nacol. This testimony meets the requirements of *Edwards v. State,* 551 S.W.2d 731 (Tex.Cr. App.1977). The appellant has made no showing of any alteration to the tape other than the removal of background noise. No harm is shown. These contentions are overruled.

Nacol urges that the trial court erred in admitting the tape recording because the prosecutor failed to comply with the trial court's order to allow defense counsel to inspect the tape. Five days before the trial, the prosecutor made available for inspection by counsel a copy of the original tape recording. This copy proved to be unintelligible. Two days into the

trial, the prosecution attempted to introduce the original tape recording played on a different tape recorder. This tape was intelligible. It is undisputed that the district attorney knew, the night before its introduction, that the second tape was "clean."

There has been no showing of harm. There is no transcript of the tape recording in the record nor has a copy of that tape been sent to this Court. Appellant filed no motion for continuance upon learning of the new tape. There is no showing of any bad faith on the part of the prosecution. To the contrary, the record shows that the prosecutor did not discover the discrepancy until the night before the tape's introduction into evidence. The focus of defense counsel's questions on the tape's admissibility during the voir dire examination and the hearing on the motion for new trial was directed to the possibility of an altered tape. The evidence shows that the tape introduced was the original tape recording unaltered by the F.B.I. lab. Further, defense counsel made no request to have the tape analyzed by an expert to determine the existence of any alterations during the trial or in a motion for new trial. Appellant's contention is overruled. *Appleman v. State,* 531 S.W.2d 806 (Tex.Cr.App.1976).

Appellant argues that the trial court erred in refusing to submit two requested instructions in his jury charge. The requested instructions read as follows:

"I.

"You are instructed that you cannot convict the defendant unless you find and believe from the evidence, if any, beyond a reasonable doubt that the 37 birthstone rings offered in evidence by the prosecution are the same birthstone rings taken from Paul McLain on February 21, 1975, as alleged in the indictment.

"II.

"There has been introduced in evidence before you 37 birthstone rings alleged to have been taken from Paul McLain on February 21, 1975; you are instructed

that you cannot consider these exhibits for any purpose whatsoever unless you find and believe from the evidence beyond a reasonable doubt that such rings are the identical rings so taken."

The charge submitted to the jury read:

". . . if you believe from the evidence beyond a reasonable doubt that the defendant, Adam S. Nacol, on or about February 21, 1975, in Wichita County, Texas, either by his own conduct or acting with Clyde T. Burns, Alton Woodruff Fanchier, Jr. or James F. Lebus, did intentionally and knowingly obtain and exercise control over personal property, to wit:

"37 ladies birthstone rings, and all of said property being of the aggregate value of more than $200.00 and less than $10,000

the said Adam S. Nacol knowing that said property was stolen, and with intent to deprive the owner, Paul McLain, of said property and without the effective consent of Paul McLain, you will find the defendant guilty as charged in the indictment."

All the terms were defined in the instructions according to their penal code definitions, V.T.C.A., Penal Code, Section 1.07.

■ The charge given requires the jury to find that the rings introduced into evidence were the same rings taken from McLain's store. Therefore, the charge given is substantially the same as the charge requested. No harm is shown. *Aranda v. State,* 506 S.W.2d 221 (Tex.Cr.App.1974); *Estrada v. State,* 479 S.W.2d 316 (Tex.Cr. App.1972).

■ Appellant submits that the court erred when it communicated with the jury outside the presence of the appellant and while the jury was not present in open court, in violation of Article 36.27, V.A.C. C.P.

The jury sent a note to the judge which read:

"We want to know how many days you get at T.D. of Corrections for the days served."

and

"We want to know how much time would be assessed for probation after he (if) gets out of prison on a two year sentence.

/s/ Dana H. MeHaffey
Foreman"

Instead of calling the jury back into court in the presence of Nacol, the judge sent the note back to the jury with the notation:

"You are only to consider what is contained in the charge.

/s/ John Bradshaw
Judge Presiding"

In *Brown v. State,* 505 S.W.2d 850 (Tex. Cr.App.1974), we held that a communication between the judge and the jury, although not in compliance with Article 36.27, supra, is not reversible error unless it amounts to an additional instruction by the court upon the law or some phase of the case. An almost identical exchange was made in *Allaben v. State,* 418 S.W.2d 517 (Tex.Cr.App. 1967). No reversible error is shown.

■ Appellant next complains of jury misconduct when the jury considered the parole laws. Jurors Terry McCullough and G. W. Farris testified that one of the jurors brought up the question of good time credit claiming that a prison inmate could get three days good time credit for every one day served. After the note was sent to the judge and the instruction returned ordering them to consider only the charge, there was no more discussion of that issue.

In view of the trial court's instruction to consider only what was in the charge, while the charge on punishment specifically forbade discussion of any possible action to be taken by the Board of Pardons and Paroles, and in view of the fact that no discussion of good time credit was had after the note was returned, there has been no showing of a detriment to appellant as would deprive him of a fair and impartial trial. *Heredia v. State,* 528 S.W.2d 847 (Tex.Cr.App.1975).

He also complains of jury misconduct. Someone stated during deliberations that Nacol did not take the stand and testify.

Juror Farris testified:

"Q. I want to ask you a question or two about some parts of your deliberation. Do you recall anything having been said in the jury room about the fact that Mr. Nacol did not testify?

"A. It was mentioned, but I don't remember who mentioned it, but it was mentioned.

"Q. Was it mentioned once or more than once?

"A. Just once, I believe.

"Q. You don't know which of the jurors made the comment?

"A. No, I sure don't."

Juror Zola Peeks testified:

"Q. I want to ask you a question or two, Mrs. Peeks, about some matters that occurred during the jury deliberations. Do you recall any comment or any conversation about the defendant's failure to testify?

"A. I think it was brought up, but who said it, I don't know.

"Q. Was it brought up once or more than once?

"A. Once as far as I can remember.

"Q. You heard one member of the jury say they wondered why he didn't testify or something to that effect?

"A. Yes."

Juror McCullough testified similarly.

■ In *Brown v. State,* 475 S.W.2d 938 (Tex.Cr.App.1971), we held that it is within the trial court's discretion to grant a new trial for jury misconduct. A denial of the motion will not be disturbed if the statements were made casually or incidentally. In *Broussard v. State,* 505 S.W.2d 282 (Tex.Cr.App.1974), we refused to reverse the conviction when there was no discussion or consideration by the jurors of the defendant's failure to testify beyond its mere mention. No reversible error has been shown.

Appellant argues that there was insufficient evidence to show that the thirty-seven rings introduced into evidence were the same rings stolen from McLain's store and that the evidence was insufficient to show that Nacol knew the rings were stolen when he received them. We disagree. Newberry testified that he never sold any Schwartz birthstone rings to Nacol. All three accomplices testified that the rings introduced were of the same type as the stolen rings. This evidence was corroborated by McLain, the owner, who identified the rings because of the trademark on the inside of the band and because of the similarity of the shape, size and color of the rings introduced to the rings stolen. As to the lack of Nacol's knowledge that the rings were stolen, Lebus testified that the fencing arrangement had gone on for so long it was no longer necessary to tell Nacol every time that the goods were stolen property. Taking the evidence in a light most favorable to the verdict, we find the evidence sufficient to sustain the conviction.

Lastly, Nacol complains of the failure of the trial court to give a charge on circumstantial evidence. In view of the direct testimony of an accomplice witness that Nacol knew the rings were stolen when he received them and that the rings were obtained from those witnesses, the court did not err in refusing to charge on the law of circumstantial evidence. *Brown v. State*, 505 S.W.2d 850 (Tex.Cr.App.1974).

The record contains no reversible error. The judgment is affirmed.