PD-0409-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/13/2015 8:20:46 AM
Accepted 4/15/2015 4:28:42 PM
ABEL ACOSTA
CLERK

NO. _____

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## ALCENIOS MARTINEZ a/k/a AUCENSIO LOPEZ,

### v.

## THE STATE OF TEXAS

From the Eastland Court of Appeals
Cause No. 11-13-00080-CR

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

April 15, 2015

ABEL ACOSTA, CLERK

**E. Alan Bennett**
State Bar #02140700
Counsel for Appellant

Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Ste. 500
Waco, Texas 76710
Telephone: (254) 772-8022
Telecopier: (254) 772-9297
Email: abennett@slmpc.com

## ORAL ARGUMENT REQUESTED

# Identity of Judge, Parties and Counsel

Appellant, pursuant to Rule of Appellate Procedure 68.4(a), provides the following list of the trial court judge, all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel.

**THE TRIAL COURT:**

Hon. Phil Robertson                                         Trial Court Judge
220th District Court, Comanche County
101 West Central
Comanche, Texas 76442

**THE DEFENSE:**

Alcenios Martinez                                              Appellant
aka Aucensio Lopez

Rickey L. Bryan                                               Trial Counsel
P.O. Box 587
Hamilton, Texas 76531

E. Alan Bennett                                       Appellate Counsel
510 North Valley Mills Drive, Suite 500
Waco, Texas 76710

**THE STATE:**

Adam Sibley                                        Trial & Appellate Counsel
Assistant District Attorney

B.J. Shepherd
District Attorney

220th Judicial District
P.O. Box 368
Meridian, Texas  76665

# Table of Contents

Identity of Judge, Parties and Counsel.................................................................2

Table of Contents.................................................................................................4

Index of Authorities ............................................................................................5

Statement Regarding Oral Argument .................................................................7

Statement of the Case..........................................................................................7

Statement of Procedural History.........................................................................8

Grounds for Review ............................................................................................8

Reasons for Granting Review .............................................................................9

Argument...........................................................................................................10

    1.    Whether the trial court in a continuous sexual abuse case must instruct the jury that jurors must be unanimous as to which acts of sexual abuse were committed when the evidence shows only two but the State offers evidence of an extraneous sex offense that does not fit within the allegations of the indictment. ................................................................10

    2.    Whether aggravated sexual assault is both a conduct-oriented and a result-oriented offense.......................................................................16

Prayer ................................................................................................................22

Certificate of Compliance..................................................................................23

Certificate of Service ........................................................................................23

Appendix ...........................................................................................................24

# Index of Authorities

## Texas Cases

*Baker v. State*, 94 S.W.3d 684 (Tex. App.—Eastland 2002, no pet.) .......... 17, 19

*Chanthakoummane v. State*, No. AP-75794, 2010 WL 1696789 (Tex. Crim. App. Apr. 28, 2010) ................................................................................. 18

*Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994) ............................... 18, 20

*Ex parte Morales*, 416 S.W.3d 546 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ................................................................................................ 13, 14

*Fulmer v. State*, 401 S.W.3d 305 (Tex. App.—San Antonio 2013, pet. ref'd) . 11

*Gonzales v. State*, 304 S.W.3d 838 (Tex. Crim. App. 2010) ............................. 20

*Huffman v. State*, 267 S.W.3d 902 (Tex. Crim. App. 2008) ............................. 18

*Kennedy v. State*, 385 S.W.3d 729 (Tex. App.—Amarillo 2012, pet. ref'd), *cert. denied*, 134 S.Ct. 681 (2013) ..................................................... 11, 12, 14

*Kreitel v. State*, No. 06-01-00200-CR, 2003 WL 193493 (Tex. App.—Texarkana Jan. 30, 2003, no pet.) ....................................................... 19

*Lane v. State*, 357 S.W.3d 770 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ................................................................................................ 16

*McMillian v. State*, 388 S.W.3d 866 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ............................................................................................ 11, 12

*McQueen v. State*, 781 S.W.2d 600 (Tex. Crim. App. 1989) ............................. 18

*Myers v. State*, No. 05-95-00842-CR, 1997 WL 36947 (Tex. App.—Dallas Jan. 31, 1997, no pet.) ............................................................................... 20

*Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005) ..................................... 11

*Pitre v. State*, 44 S.W.3d 616 (Tex. App.—Eastland 2002, pet. ref'd) ............. 19

*Pizzo v. State*, 235 S.W.3d 711 (Tex. Crim. App. 2007) ............................... 11, 14

*Pleasant v. State*, No. 01-90-00878-CR, 1992 WL 79686 (Tex. App.—Houston [1st Dist.] Apr. 23, 1992, pet. ref'd) ............................................................... 17, 19

*Saldivar v. State*, 783 S.W.2d 265 (Tex. App.—Corpus Christi 1989, no pet.) ... ..........................................................................................................................19

*Vick v. State*, 991 S.W.2d 830 (Tex. Crim. App. 1999) .......................................20

## Texas Statutes

TEX. PEN. CODE § 21.02(d) ...................................................................................11

TEX. PEN. CODE § 22.021(a)(1)(B)(i) .....................................................................17

TEX. PEN. CODE § 25.11(a) ...................................................................................12

## Rules

TEX. R. APP. P. 66.3 .......................................................................................passim

## Statement Regarding Oral Argument

Oral argument will aid the decisional process.  This petition presents two issues that this Court has not addressed. Oral argument will give counsel the opportunity to present additional argument and the judges to ask additional questions regarding appropriate jury instructions for continuous sexual abuse cases and the applicable conduct elements for the offense of aggravated sexual assault. For these reasons and to address any other issues, Appellant respectfully requests the opportunity to appear and present oral argument.

## Statement of the Case

A jury convicted Appellant of continuous sexual abuse of a young child.  The trial court, the Honorable Phil Robertson, presiding judge of the 220th District Court of Comanche County, sentenced Appellant to fifty years' imprisonment.

## Statement of Procedural History

The Eastland Court of Appeals affirmed Appellant's conviction in a unanimous opinion authored by Justice Willson that was handed down March 20, 2015. No motion for rehearing was filed.

## Grounds for Review

1. Whether the trial court in a continuous sexual abuse case must instruct the jury that jurors must be unanimous as to which acts of sexual abuse were committed when the evidence shows only two but the State offers evidence of an extraneous sex offense that does not fit within the allegations of the indictment.

2. Whether aggravated sexual assault is both a conduct-oriented and a result-oriented offense.

## Reasons for Granting Review

The Court should grant discretionary review in this appeal because the Eastland Court of Appeals: (1) has issued a decision that conflicts with the decisions of other courts of appeals; (2) has decided important questions of state law that have not been, but should be, settled by this Court; (3) has decided an important question of state law in a way that conflicts with the applicable decisions of this Court; and (4) has misconstrued sections 21.02(d) and 22.021 of the Penal Code. TEX. R. APP. P. 66.3.

# Argument

1. **Whether the trial court in a continuous sexual abuse case must instruct the jury that jurors must be unanimous as to which acts of sexual abuse were committed when the evidence shows only two but the State offers evidence of an extraneous sex offense that does not fit within the allegations of the indictment.**

The jury heard evidence of at least three instances when Appellant allegedly engaged in sexual misconduct with the complainant. However, only two of those instances fit within the allegations of the indictment. The jury charge instructed the jury that it could convict if the jurors found that he committed two or more acts of sexual abuse and that the jurors need not unanimously agree as to which specific acts of sexual abuse were committed. Appellant argued before the Eastland Court of Appeals that this was error and that the trial court should have instructed the jurors that they must unanimously agree that he committed the only two acts of sexual abuse alleged in the indictment. The trial court's failure to so instruct resulted in the possibility of a non-unanimous verdict. The Eastland Court erred by failing to require the requested unanimity instruction.

**Jury Unanimity is Required by Constitution and Statute**

"Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases." *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007) (quoting *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005)).

**Section 21.02(d) Provides an Exception to the Unanimity Requirement**

Section 21.02(d) of the Penal Code states in relevant part, "If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PEN. CODE § 21.02(d).

This provision has withstood numerous challenges premised on the assertion that it violates the constitutional requirement of juror unanimity. *See, e.g., Fulmer v. State*, 401 S.W.3d 305, 313 (Tex. App.—San Antonio 2013, pet. ref'd); *McMillian v. State*, 388 S.W.3d 866, 873 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Kennedy v. State*, 385 S.W.3d 729, 732 (Tex. App.—Amarillo 2012, pet. ref'd), *cert. denied*, 134 S.Ct. 681 (2013).

**Section 21.02(d) Should Not Apply When Only Two Acts Are Alleged**

Each of the cases cited above involved evidence of *more than* two acts of sexual abuse that fit within the allegations of the indictment. *See Fulmer*,

401 S.W.3d at 317 (6 incidents); *McMillian*, 388 S.W.3d at 869-70 (at least 3 incidents); *Kennedy*, 385 S.W.3d at 732 ("more than two").

Appellant's case is different than these because: (1) his indictment alleged only two acts of sexual abuse; (2) the State offered evidence of only two alleged incidents that fit within the allegations of the indictment; and (3) the trial court referred to only those two alleged incidents in the application section of the charge. *See Kennedy*, 385 S.W.3d at 732 ("Where the evidence supports *more than two acts of sexual abuse* over the specified time, jurors need not agree as to which individual acts were committed so long as they agree the defendant committed at least two.") (emphasis added).

The Fourteenth Court of Appeals discussed a similar scenario in a case involving section 25.11 of the Penal Code.[1]

---

[1]    Section 25.11 defines the offense of continuous violence against the family. The statute provides in relevant part:

> A person commits an offense if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an offense under Section 22.01(a)(1) against another person or persons whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code.

TEX. PEN. CODE § 25.11(a).

The indictment alleges that appellant committed an offense under Section 25.11 by committing two acts of violence—one in November 2011 and the other in January 2012—both of which caused bodily injury to the same member of appellant's family. If the evidence supported this most basic of allegations, a conviction could be had *only if the jurors unanimously agreed that the defendant committed both component assaults against the same individual complainant*.

*Ex parte Morales*, 416 S.W.3d 546, 549-50 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (emphasis added).

## The Jury Had to Be Unanimous as to the Only Two Offenses Alleged and Proved But the Trial Court Instructed Them Otherwise

Under the indictment, the evidence, and the jury charge, the jury heard evidence of only two alleged instances of sexual abuse that could form the basis for Appellant's prosecution and sustain a verdict of guilt. However, the trial court instructed the jury as follows regarding unanimity:

With regard to element 1, you need not all agree on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. You must, however, all agree that the defendant committed two or more acts of sexual abuse.

(CR at 46).

The State introduced evidence of an extraneous instance of sexual misconduct not included within the indictment, but the trial court failed to include any kind of limiting instruction in the charge.

This case is controlled by the analysis set forth in *Morales*. Because the indictment alleged only two incidents of sexual abuse, "a conviction could be had only if the jurors unanimously agreed that the defendant committed both component [incidents of sexual abuse]." *See Morales*, 416 S.W.3d at 550; *see also Kennedy*, 385 S.W.3d at 732.

The trial court effectively instructed the jurors that they could convict on the basis of any two of the three alleged instances of sexual misconduct without unanimously agreeing on the only two acts that could serve as the basis for a guilty verdict. This violated Appellant's right to a unanimous jury verdict. *See Pizzo*, 235 S.W.3d at 719.

The Eastland Court erred by holding otherwise.

**The Court Should Grant Review on This Issue**

The Court should grant review of this issue for most of the reasons listed in Rule 66.3. *See* TEX. R. APP. P. 66.3.

The Eastland Court's decision appears to conflict with the decision of the Fourteenth Court in *Morales*; *Id.* 66.3(a).

The issue of whether section 21.02(d) applies when the evidence shows only two acts constitutes an important question of state law that has not been, but should be, settled by this Court. *Id.* 66.3(b).

The Eastland Court's decision appears to conflict with the applicable decisions of this Court, namely, *Pizzo. Id.* 66.3(c).

The Eastland Court's decision appears to be based on that court's improper construction of section 21.02(d). *Id.* 66.3(d).

For these reasons, the Court should grant this ground for discretionary review.

**2. Whether aggravated sexual assault is both a conduct-oriented and a result-oriented offense.**

The Eastland Court and the Houston [First] Court have held that aggravated sexual assault[2] is both a conduct-oriented and a result-oriented offense. Other courts have concluded that the offense is only result-oriented. This Court has not addressed that question in the context of culpable mental states. In Appellant's case, the Eastland Court reversed itself and concluded that this offense is only conduct-oriented. The statutory language supports the Eastland Court's prior determination under *Baker* that the statute involves both the nature of the actor's conduct and the result of his conduct. The Eastland Court erred by concluding otherwise. This Court should grant review at minimum to resolve the conflict among Texas appellate courts and ensure that trial courts are properly instructing juries regarding the applicable culpable mental states for this offense.

---

[2]     Although the charged offense is continuous sexual abuse, the relevant culpable mental states are those applicable to the underlying offenses. *See Lane v. State*, 357 S.W.3d 770, 776 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

**The Allegations Include Both Conduct- and Result-Oriented Elements**

Section 22.021(a)(1)(B)(i) provides that a person commits aggravated sexual assault of a child if he "intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means." TEX. PEN. CODE § 22.021(a)(1)(B)(i).

The indictment alleges that Appellant twice sexually assaulted the complainant "by intentionally or knowingly causing the penetration of the sexual organ of E.M. . . . by defendant's sexual organ." (CR 6)

Therefore, Appellant contends that the State must prove, the trial court must instruct, and the jury must find that he acted intentionally or knowingly both with respect to the result ("causing the penetration") and the conduct ("by defendant's sexual organ"). *Baker v. State*, 94 S.W.3d 684, 690 (Tex. App.—Eastland 2002, no pet.); *Pleasant v. State*, No. 01-90-00878-CR, 1992 WL 79686, at *3 (Tex. App.—Houston [1st Dist.] Apr. 23, 1992, pet. ref'd).

**The Conduct Elements**

Texas courts have recognized three "conduct elements" that apply to different offenses. Those elements are: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct.

*Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). An offense may involve more than one of these elements. *Huffman*, 267 S.W.3d at 907; *McQueen*, 781 S.W.2d at 603.

Determining the requisite conduct elements that apply to a particular offense is important because "[i]t is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense." *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994); *see Chanthakoummane v. State*, No. AP-75794, 2010 WL 1696789, at *26 (Tex. Crim. App. Apr. 28, 2010). Here, Appellant's complaint before the Eastland Court was that the trial court had failed to properly tailor the applicable definitions and instructions regarding the culpable mental states.

**Appellate Courts are Divided on How to Classify This Offense**

The Eastland Court previously determined that aggravated sexual assault involves two conduct elements.

> We find that aggravated sexual assault of a child involves both result of conduct and nature of conduct elements. A person commits the offense of aggravated sexual assault of a child if he "causes the penetration of the anus or female sexual organ of a child by any means" or if he "causes the penetration of the

mouth of a child by the sexual organ of the actor." To cause "the penetration of the anus or female sexual organ" involves a result of conduct. "By any means" or "by the sexual organ of the actor" involves a type or nature of conduct.

*Baker*, 94 S.W.3d at 690 (Tex. App.—Eastland 2002, no pet.) (citing *Pitre v. State*, 44 S.W.3d 616, 620 (Tex. App.—Eastland 2002, pet. ref'd)) (other citation omitted).

The Houston [First] Court has reached the same conclusion. *See Pleasant*, 1992 WL 79686, at *3.

Conversely, the Texarkana Court has treated aggravated sexual assault as only a result-oriented offense. *See Kreitel v. State*, No. 06-01-00200-CR, 2003 WL 193493, at *3 (Tex. App.—Texarkana Jan. 30, 2003, no pet.).

The Corpus Christi Court, while ultimately classifying the offense as result-oriented, addressed the issue in an ambiguous fashion.[3] *See Saldivar v. State*, 783 S.W.2d 265, 267-68 (Tex. App.—Corpus Christi 1989, no pet.) ("aggravated sexual assault would appear to be only a 'result' type offense,

---

[3] Courts on both sides of the issue have looked to *Saldivar* to support their conclusions. *See Kreitel v. State*, No. 06-01-00200-CR, 2003 WL 193493, at *3 (Tex. App.—Texarkana Jan. 30, 2003, no pet.); *Baker v. State*, 94 S.W.3d 684, 690 (Tex. App.—Eastland 2002, no pet.); *Myers v. State*, No. 05-95-00842-CR, 1997 WL 36947, at *4 (Tex. App.—Dallas Jan. 31, 1997, no pet.); *Pleasant v. State*, No. 01-90-00878-CR, 1992 WL 79686, at *3 (Tex. App.—Houston [1st Dist.] Apr. 23, 1992, pet. ref'd).

or a mixture of 'result' and 'nature of the conduct' type offense"). The Dallas Court likewise addressed the issue in an ambiguous manner. *See Myers v. State*, No. 05-95-00842-CR, 1997 WL 36947, at *4-5 (Tex. App.—Dallas Jan. 31, 1997, no pet.).

In the context of double jeopardy, this Court has held that aggravated sexual assault is conduct-oriented. *Gonzales v. State*, 304 S.W.3d 838, 847-49 (Tex. Crim. App. 2010); *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999). Appellant suggests that the considerations and relevant analysis for determining whether an offense is conduct-oriented for purposes of double jeopardy are different than those employed when determining how the relevant culpable mental states apply to an offense.

When this Court considered a similar issue in a manslaughter case, Judge Maloney suggested in a concurring opinion that aggravated sexual assault may involve more than one conduct element. *Cook*, 884 S.W.2d at 493 n.5 (Maloney, J., concurring).

**This Court Should Grant Review**

The Court should grant review of this issue for several of the reasons listed in Rule 66.3. *See* TEX. R. APP. P. 66.3.

The Eastland Court's decision appears to conflict with the decisions of the Houston [First] Court in *Pleasant*, the Texarkana Court in *Kreitel*, and the Dallas Court in *Myers*; *Id.* 66.3(a).

The issue of whether aggravated sexual assault is both conduct-oriented and result-oriented with regard to the applicable culpable mental states constitutes an important question of state law that has not been, but should be, settled by this Court. *Id.* 66.3(b).

The Eastland Court's decision appears to be based on that court's improper construction of section 22.021 of the Penal Code. *Id.* 66.3(d).

For each of these reasons, this Court should grant this ground for discretionary review.

# Prayer

WHEREFORE, PREMISES CONSIDERED, Appellant Alcenios Martinez a/k/a Aucensio Lopez asks the Court to: (1) grant review on the issues presented in this petition for discretionary review; and (2) grant such other and further relief to which he may show himself justly entitled.

Respectfully submitted,


 */s/ Alan Bennett*
E. Alan Bennett
SBOT #02140700
Counsel for Appellant

Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Ste. 500
Waco, Texas  76710
Telephone:        (254) 772-8022
Fax:          (254) 772-9297
Email:        abennett@slmpc.com

## Certificate of Compliance

The undersigned hereby certifies, pursuant to Rule of Appellate Procedure 9.4(i)(3), that this computer-generated document contains 3,371 words.

_/s/ Alan Bennett_
E. Alan Bennett

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of this brief was served electronically on April 13, 2015 to: (1) counsel for the State, Adam Sibley at adam_sibley@mac.com; and (2) the State Prosecuting Attorney Lisa McMinn at lisa.mcminn@SPA.texas.gov.

_/s/ Alan Bennett_
E. Alan Bennett

# Appendix

Opinion of Eastland Court of Appeals:

*Martinez v. State*, No. 11-13-00080-CR, 2015 WL 1322315 (Tex. App.—Eastland Mar. 20, 2015, pet. filed)



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00080-CR

_____

## ALCENIOS MARTINEZ (A/K/A AUCENSIO LOPEZ), Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 220th District Court
### Comanche County, Texas
### Trial Court Cause No. CR-03529

## M E M O R A N D U M   O P I N I O N

The jury found Alcenios Martinez, Appellant, guilty of the offense of continuous sexual abuse of a young child.[1] The trial court assessed punishment at confinement for fifty years and sentenced Appellant accordingly. Appellant raises four issues on appeal. We affirm.

---

[1]TEX. PENAL CODE ANN. § 21.02 (West Supp. 2014).

## I. *The Charged Offense*

The grand jury returned an indictment against Appellant for the offense of continuous sexual abuse of a young child. A person commits the offense of continuous sexual abuse of a young child if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse . . . and

> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2014). "Sexual abuse" includes aggravated sexual assault. *Id.* § 21.02(c)(4). A person commits the offense of aggravated sexual assault if the person "intentionally or knowingly . . . causes the penetration of the . . . sexual organ of a child by any means" and if "the victim is younger than 14 years of age." *Id.* § 22.021(a)(1)(B)(i), (a)(2)(B). Continuous sexual abuse of a young child is a first-degree felony, punishable by imprisonment for life or for "any term of not more than 99 years or less than 25 years." *Id.* § 21.02(h).

## II. *Evidence at Trial*

Ken Maltby, a deputy sheriff with the Comanche County Sheriff's Office, testified that he received a call from Chief James Elliot of the Ranger Police Department about an eleven-year-old girl that had been sexually assaulted. Deputy Maltby identified the victim as E.M. Deputy Maltby testified that E.M. was interviewed at the advocacy center in Eastland, Texas, and that he watched the interview from a closed circuit television. From the interview, he determined that E.M. was Appellant's daughter and that she made allegations of sexual abuse against Appellant. Deputy Maltby obtained a warrant for Appellant's arrest and subsequently arrested Appellant. He set up an appointment for E.M. with the

2

sexual assault nurse examiner (SANE) in Fort Worth at Cook Children's Medical Center.

E.M. identified Appellant as her father. She testified that her parents split up when she was eight years old and that she lived with her mother. E.M. testified that, in November 2010 when she was ten years old, she and her brother J.M. visited Appellant at his house on J.M.'s birthday. She said that she and her brother had their own bedrooms at Appellant's house but that, on this occasion, Appellant's coworker lived in J.M.'s room, and her room felt cold or hot and had "a bunch of cockroaches and stuff," so both J.M. and E.M. slept in Appellant's room. E.M. testified that they all slept in Appellant's bed. She explained that Appellant slept on one side of the bed, that J.M. was in the middle, and that she slept on the other side of the bed. She testified she woke up that night when Appellant switched places with J.M. E.M. testified that Appellant subsequently pulled down her "sweats" and underwear, climbed on top of her, "put his penis into [her] vagina," and "started humping [her]." She testified that neither of them said anything and that Appellant was "just breathing heavily."

E.M. testified she tried to move to make Appellant think she was "starting to wake up" so he would stop, "but he wouldn't." She said he eventually stopped and pulled her underwear and "sweats" up. J.M. was asleep the entire time this happened. E.M. testified that she fell asleep after the incident and that, in the morning, she found a "white substance" in her underwear that was "a bit wet." Neither E.M. nor Appellant talked about what happened. E.M. testified she did not tell her mother what happened because she was "afraid" her mother would be mad at her "for not telling her anything."

E.M. testified that, several months after this incident, she saw Appellant again because she wanted him to buy her a phone. She said that, while she was asleep in Appellant's pickup, he "reached over and started touching [her] breast."

3

She moved "to the window side," but neither she nor Appellant said anything. Nothing else happened that night when E.M. slept at Appellant's house.

Sometime between July and November of 2011, E.M. and J.M. visited Appellant again. E.M. testified that, on this occasion, she and J.M. slept in Appellant's bed, with J.M. in the middle and E.M. and Appellant on either side. She testified that Appellant "got out of the bed," "went around" to where E.M. slept, "pushed [her] to where [J.M.] was so [J.M.] was now on the outer side," and got in bed next to her. J.M. did not wake up when this happened. E.M. testified that Appellant faced E.M. in the bed, pulled down his pants and shorts and E.M.'s underwear, and then "stuck his penis into [her] vagina like the - - the outer part." E.M. said that she pushed Appellant away and that he immediately stopped.

E.M. testified that she told one of her friends what had happened and that the friend told her mother, who called the school principal, John Thompson Jr. Thompson called E.M. into his office, and E.M. told him and the school counselor, John Olivo, what Appellant had done. Thompson subsequently called the police, and Olivo called E.M.'s mother. E.M.'s mother came to the school, and E.M. told her mother what had happened. E.M. testified, "I was angry at myself for not telling her."

E.M. said she went to Eastland that same day and interviewed with Robin Seabourn about what had happened. She said that, sometime later, she went to Fort Worth, told someone else about what had happened, and received a physical examination. E.M. testified that she told those two people the same thing that she testified to at trial.

Thompson, who was the middle school principal of Ranger I.S.D. in February 2012, testified he had received a phone call from a student's parent that E.M. "possibly was sexual[ly] assaulted." He testified that he met with E.M. in the coach's office during E.M.'s P.E. class. At that time, E.M. did not "say either

4

way" what had happened. Thompson testified that, the next day, he received "an inner-office e-mail" that indicated a student had reported that someone "needed to probably talk to [E.M.] again." Thompson called E.M. into Olivo's office, and both he and Olivo talked with E.M. E.M. cried and reported that something sexual had happened with her father. E.M. said that the last time was in October or November of 2011. Thompson said that they called E.M.'s mother, that she came to the school, and that E.M. told her mother what had happened. Thompson testified that E.M. was "an A/B student, never a discipline problem, gets along real well with all of the kids, very quiet normally, just a great kid" and that he "wouldn't expect her in a situation like this to make up a story like that."

Olivo, who was the middle school counselor in the Ranger school district in the spring of 2012, testified that he met with E.M in February 2012. He was present when E.M. told her mother what happened. He said that E.M. "was a good student, good grades, real personable, . . . no disciplinary things in the classroom or anything" and that he "didn't see any reason not to believe . . . what she was saying."

Robin Seabourn, a forensic interviewer at the children's advocacy center in Eastland, testified that she conducted a forensic interview with E.M. in February 2012. She said that Chief Elliot scheduled the interview and that he and Deputy Maltby watched the interview live on a video screen in another room. Seabourn testified that E.M. identified the difference between the truth and a lie and described in detail what happened to her. Seabourn testified that E.M. identified Appellant as the individual who sexually abused her and that her story "was very consistent."

Rebecca Sullivan, a SANE at Cook Children's Medical Center, testified that she performed a sexual abuse exam on E.M. in February 2012. She asked E.M. why she was there that day, and E.M. responded "because my dad abused me. He

5

like touched me down there, my vagina, with his penis." Sullivan asked E.M. if it happened once or more than once, and E.M. told her that "it happened more than once." She testified that, when she asked E.M. "if any other types of contact happened," E.M. said, "[W]hen we were in the car that he touched my front part with his hands one time . . . when I was eight or nine." E.M. also told Sullivan that "there was contact" with her chest on top of her clothes when they were in the car. Sullivan asked E.M. how old she was when the penile vaginal contact started. E.M. said she was ten. Sullivan testified that E.M. identified Appellant as her father. E.M. told her that the contact happened at Appellant's house. E.M. also told her that the last time anything had happened was "over the summer, in September." Sullivan testified that, based on what E.M. told her, E.M. had described "penetration" of her vagina by Appellant's penis on more than one occasion.

Sullivan said that E.M. had no signs of injury or trauma to her genitalia and that those findings were consistent with E.M.'s medical history. She testified that it was "actually rare" to have physical findings in a sexual abuse exam and explained that "most children don't disclose right away, . . . so when we're doing their exam plenty of time has passed so if there ever was an injury it's had time to heal." She stated that it was rare to diagnose sexual abuse from the exam and that "[t]he most important part is the history, what the child said happened." Sullivan's impressions were that E.M. had been sexually abused and that she had a normal exam with no anal or genital trauma. She read her notes about E.M.'s demeanor during the exam. E.M. "was alert and oriented, cooperative" and "answered the questions readily and with eye contact."

J.R., E.M.'s mother, testified that she lived with Appellant for ten years but that she was never married to him. J.R. met Appellant when she was about fourteen years old and Appellant was about twenty-seven. Appellant was

6

"[m]aybe" thirty-nine at the time of trial. J.R. was sixteen or seventeen when she had E.M., and E.M. was twelve at the time of trial. She testified that E.M. has never had a boyfriend and has never wanted to have a boyfriend. J.R. said that E.M. was not mad at Appellant when he did not buy her a new cell phone. The first time she heard about what Appellant did to E.M. was when she went to the school and met with E.M., the principal, and the counselor. J.R. testified that E.M. was intelligent and honest and that she had no problems with E.M. at home. According to J.R., E.M. is not "the type of girl that would make something like this up."

Andy Hesbrook, a friend of Appellant, testified that he had known Appellant for about fourteen years, that Appellant was a good father, and that he had heard nothing negative about Appellant. Maggie Hesbrook, who described Appellant as her "brother-in-law's brother," testified that she had known Appellant for about twenty years, had never heard anything negative about Appellant, and believed Appellant to be a good father.

Eladio "Billy" Martinez, Appellant's brother, testified that he had heard nothing negative about Appellant and that Appellant was a good father. He last saw E.M. at Appellant's house in September 2011. Esther Martinez, Appellant's sister-in-law, testified that she had known Appellant for twenty-three years, that he was a good father, that she had heard nothing negative about him, and that E.M. never appeared uncomfortable around Appellant. Glenn Hodges, who had known Appellant for ten or twelve years, testified that Appellant's family members were "real dependable, honest kind of people" and that he had heard nothing negative about Appellant. James Delaney, who had known Appellant for three or four years, testified that Appellant was honest and trustworthy. Steve Ruedas, who described Appellant as his "aunt's brother," testified that he thought Appellant was a good father and that he had never heard anything negative about Appellant.

7

Appellant, through an interpreter, testified that he slept in the same bed with E.M. and J.M. but that "each one had their own cover." They slept in the same bed because he had only one air conditioner and because his friend stayed and lived in the other room. Appellant testified that J.M. slept in the middle, that Appellant did not sleep next to E.M., and that Appellant never changed that arrangement. E.M. and J.M. visited him on J.M.'s birthday in November 2010, but they stayed at his brother's house, each on different sofas. He remembered that E.M. last visited him in June 2011 "because it was one month before her birthday and she asked for a cell phone." In response to his brother's testimony regarding having seen E.M. at Appellant's house in September 2011, Appellant said that his brother "doesn't pay attention to the time frames" and that the September visit never occurred. According to Appellant, E.M. and J.M. never visited his house in November 2011.

Appellant testified that he thought E.M. did not tell the truth because one time "[t]hey wanted me to pick them up and I couldn't because I didn't have any money. They only would call me, look for me when they wanted something." He explained that E.M.'s testimony—that Appellant touched her breast—could not be true because the friend that lived with Appellant always went with Appellant when he went to Ranger to visit his children; the friend sat in the front seat, so E.M. could not have sat in the front seat. Appellant never spent time alone with his children because his friend that lived with him would always be with them. Appellant said that E.M. lied because E.M.'s mother had threatened to send her back to Appellant. Appellant testified, "I know that I'm innocent. [I] have not done anything of what I'm accused."

### III. *Issues Presented*

Appellant presents four issues on appeal. He challenges (1) the sufficiency of the evidence to prove his guilt, (2) definitions in the jury charge, (3) instructions

in the jury charge, and (4) the failure of the trial court to read its answer to the jury's question in open court.

IV. *Standards of Review*

We apply the sufficiency standard outlined in *Jackson* and its progeny to Appellant's sufficiency issue. *Jackson v. Virginia*, 443 U.S. 307, 318 (1979); *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review all of the evidence introduced by both the State and Appellant in the light most favorable to the jury's verdict and decide whether any rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. We measure sufficiency of the evidence against a hypothetically correct jury charge. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The trier of fact holds the responsibility to resolve conflicts in the testimony fairly, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. We are to resolve inconsistencies in the testimony in favor of the verdict. *Curry*, 30 S.W.3d at 406.

We review an alleged jury charge error that the defendant did not object to at trial in two steps: We determine "(1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). We will not reverse for charge error "unless the record shows 'egregious harm' to the defendant." *Id.* In our determination of whether an error caused egregious harm, we review the entire

9

jury charge, the state of the evidence, the arguments of counsel, and any other relevant information in the record. *Id.* at 750 n.48.

V. *Analysis*

A. *Sufficiency of the Evidence*

Appellant argues that the evidence is insufficient to prove that he committed the alleged offense. Specifically, he contends that "E.M.'s testimony was marked by inconsistencies; the delay in reporting and lack of physical evidence undercut the reliability of her testimony; E.M. had numerous motives for fabricating her testimony; her testimony was directly controverted by several witnesses; and her testimony is contrary to the evidence of [Appellant's] good character."

The jury could have convicted Appellant if it found beyond a reasonable doubt that Appellant intentionally or knowingly caused the penetration of the sexual organ of E.M. by his sexual organ on two separate occasions over a span of more than thirty days, that Appellant was at least seventeen years of age, and that E.M. was under the age of fourteen when both of these acts occurred. *See* PENAL §§ 21.02(b), 22.021(a)(1)(B)(i), (a)(2)(B). The testimony of E.M., the forensic interviewer, and the SANE showed that Appellant intentionally or knowingly caused the penetration of E.M.'s vagina with his penis on two separate occasions during a period of more than thirty days in duration. Appellant was over seventeen years of age, and E.M. was under the age of fourteen when those acts occurred.

E.M.'s testimony alone provides sufficient evidence to support the allegations that Appellant twice committed the offense of aggravated sexual assault as alleged in the indictment and included in the jury charge. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2014); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding child victim's unsophisticated terminology alone established element of penetration beyond a reasonable doubt). We disagree with Appellant that this case matches the hypothetical situation described in

*Brooks* to illustrate a scenario in which the evidence would be insufficient under *Jackson*. In the hypothetical, the jury convicted "A" of robbery based upon the testimony of a witness who identified "A" as the robber of a convenience store, even though a surveillance videotape clearly showed that "B" committed the robbery. *See* 323 S.W.3d at 907. We have found no such evidence in the record. We have reviewed the record, and as we have previously outlined, we hold that sufficient evidence exists to convict Appellant of the alleged offense. *See Jackson*, 443 U.S. at 319. We overrule Appellant's first issue.

### B. Jury Charge Error

Appellant did not object to the jury charge at trial. Therefore, we will not reverse unless there is error in the charge and the error caused Appellant egregious harm. *See Ngo*, 175 S.W.3d at 743–44. Egregious harm exists if the error affected the very basis of the case, deprived Appellant of a valuable right, vitally affected a defensive theory, or caused Appellant to not have a fair and impartial trial. *See Jourdan v. State*, 428 S.W.3d 86, 97–98 (Tex. Crim. App. 2014) (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)); *Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex. Crim. App. 1985) (op. on reh'g).

#### 1. Culpable Mental State Definitions

Appellant challenges the definitions in the jury charge for "intentionally" and "knowingly." Appellant claims that aggravated sexual assault involves both a "result of conduct" offense and a "nature of conduct" offense but that the jury charge limited the definitions to a "result of conduct" offense. Appellant cites a previous case out of this court in which we concluded that aggravated sexual assault involved both "result of conduct" and "nature of conduct" elements. *Baker v. State*, 94 S.W.3d 684, 690–91 (Tex. App.—Eastland 2002, no pet.). Since our opinion in *Baker*, however, the Court of Criminal Appeals has explicitly stated that aggravated sexual assault is a "nature-of-conduct" statute. *Gonzales v. State*,

11

304 S.W.3d 838, 849 (Tex. Crim. App. 2010). Although more than one "conduct element" may apply to a single offense, in light of *Gonzales*, we disavow our analysis in *Baker*.

But we need not reach this issue to resolve this case because, even if we assume, without deciding, that there is error in the jury charge, Appellant did not suffer egregious harm. At trial, Appellant did not contest his culpable mental state; he denied any touching or penetration of E.M. Therefore, an erroneous instruction of the culpable mental state could not egregiously harm him. *See Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) (holding that the defendant's intent, "while it was a part of the State's required proof, was not a contested issue and consequently [the defendant] could not be egregiously harmed by the definition of the intentional and knowing state of mind").

Additionally, if there is error in the jury charge, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge" to determine egregious harm. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995) (quoting *Hughes v. State*, 897 S.W.2d 285, 296 (Tex Crim. App. 1994)) (internal quotation marks omitted). The application portion of the jury charge instructed the jury as follows:

> The first alleged act of sexual abuse is that the [Appellant] committed the offense of aggravated sexual assault. Aggravated sexual assault is an act of sexual abuse if the state proves, beyond a reasonable doubt, two elements. The elements are that —
>
>     a. the [Appellant] intentionally or knowingly caused the penetration of the sexual organ of another person by any means; and
>
>     b. the other person was a child . . . younger than fourteen years of age.

12

The instructions for the second alleged act of sexual abuse were identical to the instructions for the first alleged act except the words "first alleged act" were replaced with "second alleged act." *See* PENAL § 22.021(a)(1)(B)(i). Even if we assume, without deciding, that the definitions of intentionally and knowingly were erroneous, the application section correctly instructs the jury because it follows the language of the statute. *See id.* Therefore, the jury charge caused no egregious harm. *See Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd) ("When the application paragraph correctly instructs the jury on the law applicable to the case, this mitigates against a finding of egregious harm."). We hold that, even if the definitions contained errors, those errors did not egregiously harm Appellant. *See Ngo*, 175 S.W.3d at 743–44; *Reed*, 421 S.W.3d at 30; *Jones*, 229 S.W.3d at 494. We overrule his second issue.

### 2. Instructions on Unanimity

In his third issue, Appellant asserts the jury charge was erroneous in its instructions that the jury "need not all agree on which specific acts of sexual abuse were committed by the defendant" without a limiting instruction that the jury could only consider the two acts of sexual abuse included in the indictment and not the extraneous offense evidence presented regarding touching E.M.'s breast. In a continuous sexual abuse case, a jury need not agree unanimously on which specific acts of sexual abuse the defendant committed; it must only agree that the defendant committed two or more acts of sexual abuse over a period of thirty days or more in duration. PENAL § 21.02(d). Additionally, "touching . . . the breast of a child" is not an act of sexual abuse for purposes of the offense of continuous sexual abuse of a young child. *Id.* § 21.02(c)(2).

The jury heard evidence that Appellant touched E.M.'s breast. The jury charge instructed the jury that they "must all agree on elements 1, 2, 3, and 4 listed above," which contained two alleged acts of aggravated sexual assault, the time

13

frame, the age of the actor, and the age of the victim, respectively. Additionally, the jury charge instructed the jury that "[w]ith regard to element 1, you need not all agree on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. You must, however, all agree that the defendant committed two or more acts of sexual abuse." Element one only contained two alleged acts of sexual abuse, and both were that Appellant "intentionally or knowingly caused the penetration of the sexual organ of [a child] by any means." The jury charge contained no language related to the breast-touching incident. The State, however, referenced the breast-touching incident in its closing argument but also stated that the jury would not "decide whether [Appellant is] guilty of that offense." The instruction that Appellant complains of in the jury charge used substantially the same language as the statute and was not erroneous. *See* PENAL § 21.02(d).

We hold that, whether or not the charge contained any error, the charge did not cause egregious harm because the charge properly instructed the jury that it must find that Appellant committed at least two of the two alleged acts of sexual abuse, because the charge contained no reference to the breast-touching incident, and because the State told the jury in argument that they would not decide whether Appellant was guilty of the breast-touching incident. *See Ngo*, 175 S.W.3d at 750 n.48. The jury could not have been confused or mistakenly believed that it could convict Appellant based on the breast-touching incident. We overrule Appellant's third issue.

*C. Communication With the Jury*

Appellant complains that the trial court erred by not reading its answer to the jury's question in open court. He alleges that he did not expressly waive this right. *See* TEX. CODE CRIM. PROC. ANN. art. 36.27 (West 2006). A trial court does not give additional instructions when it refers the jury to the jury charge; thus,

14

noncompliance with Article 36.27 does not result in reversible error in such a situation. *See McFarland v. State*, 928 S.W.2d 482, 517–18 (Tex. Crim. App. 1996) (citing *Nacol v. State*, 590 S.W.2d 481, 486 (Tex. Crim. App. 1979)), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998). The jury sent a note to the trial court and requested the dates or time span when the sexual abuse occurred. After discussing the jury's note with the parties, the trial court ultimately referred the jury to the written instructions found in the jury charge and did not answer the question. Neither the State nor Appellant objected to the court's actions. We hold that no reversible error occurred in connection with any noncompliance with Article 36.27 because the trial court did not further instruct the jury. *See id.* We overrule Appellant's fourth issue.

## VI. *Conclusion*

We hold, after a review of the record, that (1) sufficient evidence existed to convict Appellant of the offense of continuous sexual abuse of a young child; (2) the jury charge, even if it contained errors in the definitions or instructions, did not cause Appellant egregious harm; and (3) no reversible error occurred when the trial court referred the jury to the jury charge. *See Jackson*, 443 U.S. at 319; *Ngo*, 175 S.W.3d at 743–44; *McFarland*, 928 S.W.2d at 517–18.

## VII. *This Court's Ruling*

We affirm the judgment of the trial court.


March 20, 2015                                      MIKE WILLSON

Do not publish. *See* Tex. R. App. P. 47.2(b).      JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

15